SEAWORTHY SERVICE, INC.,

    Plaintiff,

    v.

NANEA, Official No. 1137164, its engines, machinery, appurtenances, etc., *in rem*,

    Defendant.

IN ADMIRALTY

CASE NO. 09-5062BHS

ORDER GRANTING MOTION FOR COUNTER-SECURITY

This matter comes before the court on the motion for counter security filed by claimant Full Throttle Holdings, LLC ("FT Holdings"). Dkt. 15.

## I. BACKGROUND

Between approximately October 2007 and December 2008, Plaintiff Seaworthy Service, Inc. ("Seaworthy") provided necessaries to Defendant NANEA, Official No. 1137164, her engines, machinery, appurtenances, etc. (hereafter "the Vessel") in the form of painting and related repair work at the request of the Vessel's owner, FT Holdings. Seaworthy alleges that FT Holdings failed to provide full payment for Seaworthy's services. Dkt. 1 at 2. According to FT Holdings, Seaworthy initially provided services but a dispute arose regarding the quality and timeliness of the work. Dkt. 14 at 3. In order to resolve the dispute, FT Holdings maintains that the parties entered into a Marine Services Agreement ("MSA"). *Id.*; Dkt. 16, 5-14.

ORDER - 1

Seaworthy maintains that it terminated work in December 2008 because it did not receive payment for work performed on the project. FT Holdings counters that Seaworthy failed to perform as agreed in the MSA, and that it made payments to Seaworthy totaling $118,820.09. Dkt. 14 at 4. FT Holdings maintains that it notified Seaworthy of the problems with its performance and attempted to work out an acceptable solution, and that Seaworthy responded by halting work on the Vessel. *Id*.

On January 9, 2009, FT Holdings filed suit against Seaworthy in King County Superior Court claiming that Seaworthy breached the MSA. Dkt. 17, 3-9. On February 4, 2009, Seaworthy filed a complaint to foreclose maritime lien *in rem* in this Court. Dkt. 1. Seaworthy maintains that although it also intends to defend against FT Holdings' state lawsuit, it filed suit in this Court to ensure payment of the amount owed for its lien claim for necessaries.

Seaworthy also moved for an order authorizing the arrest of the Vessel. Dkt. 4. The Court granted this order and an *in rem* arrest warrant was issued. Dkts. 5 and 6. On February 26, 2009, FT Holdings posted security for the release of the Vessel in the amount of $52,000.00. *See* Dkt. 8 (Order granting cash bond and stipulated request for vessel release). The Vessel was arrested on or about February 27, 2009 and was released shortly thereafter.

On March 5, 2009, FT Holdings filed a claim to the Vessel. Dkt. 10. On March 24, 2009, FT Holdings answered Seaworthy's complaint and brought several counterclaims, including a breach of contract claim. Dkt. 14. FT Holdings claims that it has suffered damages in the amount of $225,490.09 as a result of Seaworthy's alleged breach. *Id*. at 6. These damages include a refund of the $118,820.09 payment, $60,8800 for the cost of completing the work, $4,290 for the cost of towing the Vessel to another shipyard, and $41,500 liquidated damages for the delay in completion of the contract. *Id*.

On March 26, 2009, FT Holdings filed the instant motion. Dkt. 15. FT Holdings moves the Court to require Seaworthy to post security for FT Holdings' counterclaims in

the amount of $221,200.09. On April 6, 2009, Seaworthy filed a response. Dkt. 18. Seaworthy opposes FT Holdings's motion, and alternatively requests that if the Court grants FT Holdings' motion, Seaworthy should be required to post counter-security in an amount no greater than $52,000. *Id*. at 2. On April 10, 2009, FT Holdings filed a reply. Dkt. 22.

## II. COUNTER-SECURITY UNDER ADMIRALTY RULE E(7)

The relevant provision of the Supplemental Rules for Admiralty or Maritime Claims reads:

> **Security on Counterclaim.**
> (a) When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Fed. R. Civ. P. Supp. Admiralty Rule E(7).

Although the language of this rule is automatic, a district court has discretion to excuse a plaintiff from posting counter-security "for cause shown." *Id*.; *Whitney-Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F. Supp. 1302 (W.D. Wash. 1982).

The parties have directed the Court to several cases where courts have applied varying approaches to determining whether counter-security should be ordered. However, these cases generally involve an equitable balancing approach, *see Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987), guided by two principles. First, the intent of Rule E(7) is to make the parties equal as regards security. *Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 399 (2nd Cir. 1995). At the same time, "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Id*. at 400; *see also Titan*, 808 F.2d at 404.

With regard to the first factor, courts have disagreed as to "what it means to be 'equal' as regards security." *MMI Int'l, Inc. v. M/V Skyros*, 1990 WL 304062, *6 (N.D. Cal. 1990) (unpublished opinion). For example, the *Titan* court considered the likelihood

of a plaintiff's ability to post counter-security and ultimately upheld the trial court's ordering of counter-security. *See Titan*, 808 F.2d at 403. However, the *Whitney* court denied a defendant's[1] request for counter-security because there was no showing that the plaintiff would be *unable* to satisfy a judgment in favor of the defendant. *Whitney-Fidalgo*, 542 F. Supp. at 1305 (concluding that the "only" purpose of Rule E(7) is to remedy a defendant's insecurity in respect to the likelihood of satisfying a judgment awarded by the court). The *MMI* court rejected the *Whitney* approach, and granted a Rule E(7) request because the plaintiff had the financial resources to post the counter-security. *MMI*, 1990 WL at *6. The *MMI* court also believed that Rule E(7) "assumes security will usually be required." *Id.*

In addressing the first factor, courts have also considered whether the defendant has asserted counterclaims *in rem* or *in personam*. In *Afram Lines Int'l v. M/V Capetan Yiannis*, 905 F.2d 347, 349-350 (11th Cir. 1990), the court held that when (1) the plaintiff does not seek, by posting counter-security, to release any property from the defendant's custody and (2) the defendant could not have commenced its action *in rem* or *quasi in rem*, a district court should not, "absent extraordinary circumstances," order counter-security in an amount exceeding the amount posted as security by the defendant. *See also Everman v. Crawley*, 1993 WL 468652, *4 (W.D. Wash. 1983) (unpublished opinion) (denying defendant's request to award counter-security in the amount of $400,000 when defendant, who was proceeding *in personam*, posted $35,000 in security, finding that ordering $400,000 would award defendant a windfall).[2]

With regard to the second factor, courts have recognized the importance of maritime liens. As the *Titan* court explained:

---

[1] For purposes of this order, the Court refers to a party seeking counter-security as a "defendant."

[2] Courts have also considered whether a defendant's counterclaim is frivolous. Seaworthy does not appear to allege that FT Holdings' claims are frivolous here, and the Court has no reason to believe that the claims are frivolous.

ORDER - 4

> We believe the guidon for [Rule E(7)] analysis is the court's obligation to preserve the integrity of maritime liens. These vintage security devices endure and are protected because of their commercial usefulness. Despite the advent of instant communications, and the availability of sophisticated international financing, the ability of a ship's master to bind his vessel in rem continues to facilitate the prompt supply of goods and services.

*Titan*, 808 F.2d at 404.

## III. DISCUSSION

For the reasons below, the Court grants FT Holdings' motion for counter-security. However, the requested amount is reduced to $52,000, which is equal to the amount FT Holdings has posted in security.

At the outset, the Court concludes that, under the plain language of Rule E(7), there is a presumption in favor of granting a defendant's motion for counter-security when the defendant has itself posted security, and where it has asserted the requisite counterclaim. *See MMI*, 1990 WL at *6. In addition, the Court is not persuaded by Seaworthy's arguments in opposition to FT Holdings' motion.

Seaworthy first contends that FT Holdings' motion should be denied because FT Holdings has not met its burden of showing a sufficient need for counter-security. Dkt. 18 at 6. The Court disagrees with Seaworthy's contention that FT Holdings bears this burden. Under the plain language of Rule E(7), counter-security must be given unless the district court finds good cause for denying counter-security. This language suggests that a plaintiff bears the burden of showing that good cause exists to relieve the plaintiff of its obligation to provide counter-security. *See MMI*, *supra* (rejecting the *Whitney* approach and finding a presumption in favor of granting counter-security).

Second, Seaworthy asserts that, because FT Holdings initiated a lawsuit in state court prior to the initiation of the instant action, FT Holdings is not entitled to counter-security. *Id*. at 8. Seaworthy argues that Rule E(7)'s purpose of providing an equal playing field is inapplicable here because FT Holdings was not forced to bring its claims against Seaworthy; rather, Seaworthy argues, FT Holdings compelled Seaworthy to bring the instant action by initiating litigation in state court. *Id*. Seaworthy further argues that

ORDER - 5

there is no need to order counter-security because FT Holdings may seek alternative security procedures under state law. *Id*. at 9, *citing* RCW Chapter 6.26. These arguments are not persuasive. As argued in FT Holdings' reply, the only requirement in Rule E(7) is that a plaintiff's counterclaim arise from the same transaction or occurrence, and Seaworthy agrees that FT Holdings' counterclaim was compulsory. Rule E(7) does not preclude a defendant from seeking counter-security when that defendant has previously filed a state lawsuit. The Court also finds persuasive FT Holdings' concerns regarding the possibility of the state lawsuit being dismissed prior to resolution of FT Holdings' state claims. *See* Dkt. 22 at 5.

Third, Seaworthy contends that requiring counter-security will discourage it from prosecuting this action. *Id*., 9-10. Seaworthy argues that it is a local two-person company which relies on the credit of vessels to secure its rights of payment. It argues that "such vendors will be discouraged from seeking payment . . . in the event they are required to post counter-security" to prosecute claims. *Id*. at 10. Seaworthy correctly points out that courts have expressed concern regarding the deterrent effect the requirement of counter-security may bear on the enforcement of maritime liens. *See, e.g., Expert Diesel, Inc. v. Yacht "Fishin Fool,"* 627 F. Supp. 432, 433 (S.D. Fla. 1986). However, the Court concludes that, in this case, Seaworthy has not shown that posting counter-security will inhibit its ability to prosecute its claims. Seaworthy has not provided any evidence (nor has it argued) that it lacks financial resources to post counter-security. In addition, the Court does not find that requiring counter-security in this case will have a broad determent effect on other vendors.

Fourth, Seaworthy moves the Court to deny counter-security because FT Holdings' claims could not have been brought *in rem* or *quasi in rem*. Dkt. 18, 5-6. Specifically, Seaworthy argues that requiring counter-security is disfavored because FT Holdings is instead pursing *in personam* claims. *Id*. (citing *Afram* and *Expert Diesel, supra*). The Court declines to adopt Seaworthy's position that counter-security should be

1 denied when a defendant could not have brought its claims *in rem* or *quasi in rem*. *See*
2 *Result Shipping*, 56 F.3d at 400, n.3 (disagreeing with *Afram* to the extent it suggested
3 counter-security is improper unless a plaintiff is seeking to have released property which
4 a defendant has previously attached).

5 While the Court grants FT Holdings' motion for counter-security, it agrees with
6 Seaworthy that the amount to be posted should not exceed the amount FT Holdings has
7 posted as security for the Vessel. The Court agrees that when (1) a plaintiff does not seek,
8 by posting counter-security, to release any property from a defendant's custody and (2)
9 the defendant could not have commenced its action *in rem* or *quasi in rem*, a district court
10 should not, "absent extraordinary circumstances," order counter-security in an amount
11 exceeding the amount posted as security by the defendant. *See Afram* and *Everman*,
12 *supra*.[3] The Court agrees with the concerns expressed in *Everman* that requiring a
13 plaintiff to post an amount exceeding the amount posted by a defendant may create a
14 windfall for the defendant. *See Everman*, *supra*. Moreover, in this case, ordering counter-
15 security in excess of the amount Defendant posted appears to be at odds with the intent of
16 Rule E(7). The purpose of Rule E(7) is not to provide assurance to a defendant of a
17 plaintiff's ability to satisfy a judgment on the counterclaims; rather, the intent is to place
18 the parties on equal footing so a defendant is not at an undue disadvantage because it was
19 compelled to post security to release its *rem*. In any event, FT Holdings has made no
20 showing that Seaworthy would not likely be able to satisfy a judgment on the
21 counterclaims. In addition, the Court finds no extraordinary circumstances that justify
22 ordering counter-security in an amount exceeding $52,000.

---

[3] FT Holdings argues that *Result Shipping* rejected the approach in *Afram*. Dkt. 22 at 6. While *Result Shipping* disagreed with the *Afram* court's suggestion that the fulfilment of the first two *Afram* factors make counter-security disfavored, *Result Shipping* did not expressly disagree with the *Afram* court's decision to limit counter-security to the amount posted by the defendant. In any event, *Result Shipping* is not binding on this Court. The Court also notes that at least one other district court in the Ninth Circuit has adopted the *Afram* approach. *See Everman, supra*.

## IV. ORDER

Therefore, it is hereby ORDERED that

Claimant FT Holdings' motion for counter-security (Dkt. 15) is **GRANTED**, and Plaintiff is ORDERED to post counter-security in the amount of $52,000.

It is further ORDERED that this action is **STAYED**, pursuant to Rule E(7), pending Plaintiff's deposit into the registry of the Court.

DATED this 28th day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge